

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2003

# Tang v. Atty Gen

Precedential or Non-Precedential: Non-Precedential

Docket 02-2874

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Tang v. Atty Gen" (2003). *2003 Decisions.* Paper 661.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/661

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2874

YONG TANG; YI *LAN LI,
                                    Petitioners

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES,
                                    Respondent

*(Amended per the Clerk's Order of 7/22/02)

APPEAL FROM THE UNITED STATES
IMMIGRATION AND NATURALIZATION SERVICE
Agency No. A70 582 053

Argued March 4, 2003

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Opinion Filed: April 4, 2003)

Jan A. Reiner, Esq. (Argued)
350 Broadway
New York, NY 10013

Attorney for Petitioner Yong Tang

Theodore N. Cox. (Argued)
Suite 1802
401 Broadway
New York, NY 10013

Attorney for Amnesty Int'l USA, Inc. Amicus-Appellant

Michelle E. Gordon, Esq. (Argued)
Donald E. Keener, Esq.
John M. McAdams, Jr., Esq.
United States Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, DC  20044

Attorney for Respondent

_____

OPINION

_____

BARRY, Circuit Judge

Because we write primarily for the parties in this case, we will not recite the

underlying facts except when necessary to our analysis.  Yong Tang and his wife, Yi Lan Li,

petition for review of a decision of the Board of Immigration Appeals ("BIA") refusing

them asylum or withholding of deportation on the basis that Yong Tang's account of past

persecution and fear of future persecution in the People's Republic of China ("PRC")

lacked plausibility[1].  Where a refusal to grant asylum or withholding of deportation is

_____

[1] Given that the BIA summarily affirmed the decision of the Immigration Judge ("IJ")
and never issued a written opinion, the decision of the IJ is to be reviewed by this Court as

2

premised on an adverse credibility determination, we will uphold the agency's findings of fact to the extent that they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir.1998) (internal quotations omitted); see also Senathirajah v. I.N.S., 157 F.3d 210 (3d Cir. 1998). Because the adverse credibility determination was not supported by substantial evidence, we will vacate the BIA's order and remand for further proceedings.

Petitioner, a pro-democracy Chinese dissident, testified to his account of persecution while in the PRC. This account included his placement in a "re-education" labor camp as a child along with his family and, when he was older, his arrest and detention by the government of the PRC in response to his pro-democracy activities, activities which included a leadership role at various demonstrations, such as the Tiananmen Square protests in the days leading up to the massacre of student demonstrators by the government. He also described having been brutally beaten until he lost consciousness in an attempt to compel him to reveal the names of fellow activists. Petitioner's acceptance to graduate school was revoked by the government and subsequently conditioned upon his submission of a written "confession" of his "violations." Additionally, although he was promised a position commensurate with his level of education by the government, he was, in fact, assigned to do manual labor. Petitioner recounted persistent police visits, frequent interrogation, and constant surveillance. Asserting a well-founded fear of future persecution in the PRC, he

---

though it were that of the BIA. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

cited his numerous pro-democracy activities in the United States, including his affiliation with the Chinese Alliance for Democracy, his participation in protests in front of the Chinese Embassy in New York to rally for democratic reform in China, and his publication of articles critical of the government of the PRC in prominent international Chinese-language journals.

The IJ, it is important to note, did not take any issue with petitioner's testimony that he had been politically active against the PRC government, that he had suffered persecution, or that he fears persecution in the future. Moreover, respondent concedes that the IJ's determination "was not based on inconsistencies, discrepancies, or lack of corroboration, detail or specificity." Resp. Br. at 31. Rather, the IJ denied petitioner's application for asylum and withholding of deportation on the basis that his evidence was not plausible in a few respects. The IJ pointed particularly to four areas he found "curious," (App. at 44), "less than credible" (id. at 46), and "rais[ing] some eyebrows on the part of the Court" (id. at 46-47), and which, the IJ maintained, undermined the notion that petitioner had a legitimate fear of persecution: (1) petitioner's employment in the United States by NIC International Corporation ("NIC"), a "foreign corporation...owned or associated with" the PRC (id. at 44); (2) the "C8" marking on the back of petitioner's work authorization card, which revealed his asylum applicant status and, according to the IJ, should have precluded his hire, were he truly being persecuted; (3) the fact that petitioner's job title in China was that of Director Assistant, Bureau of Shipping Administration, which the IJ felt conferred upon him a "certain degree of responsibility and authority" inconsistent with that which a

4

dissident would be accorded (id. at 46); and (4) the fact that petitioner and his wife were allowed to come to the United States on government-issued student visas.

Our review of the record reveals that the IJ's conclusions regarding the implausibility of petitioner's testimony as to these "certain issues," id. at 45, were premised on inferences, assumptions, and feelings that range from overreaching to sheer speculation. The record is bereft of evidence, much less "substantial evidence," to support an adverse credibility determination. See, e.g., Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (adverse credibility determination was reversible where it was premised on impermissible speculation and not record evidence).

In the first place, there is no basis on the record for the IJ's conclusion that NIC was owned by or associated with the PRC and certainly no basis which permitted the conclusion that petitioner had knowledge of any such association; indeed, he testified that he simply did not know. But it was on the basis of these wholly unsupported conclusions that the IJ came to the further conclusion that by accepting employment with NIC, petitioner did not act like a person who feared persecution by the PRC.[2] Moreover, it is simply untenable to say that because petitioner worked for a company run by persons of Chinese extraction – and that was all that the evidence disclosed – he would not reasonably fear persecution upon

_____

[2] We note, as an aside, that a foreign corporation under New Jersey law is defined as "a corporation . . . organized under laws of a jurisdiction other than [New Jersey]. . . ." N.J. Stat. 14A:1-2.1(i)(2002). NIC was incorporated in New York, and is, thus properly termed a "foreign corporation" in New Jersey. Clearly, NIC's "foreign" status should never have been deemed an indicator that it was a company owned by or associated with the government of the PRC.

5

his return to China.

But the IJ went on in this vein, stating that he simply could not believe that "officers of a foreign corporation from the government of the People's Republic of China are so ignorant" that they would not have been aware that the C8 designation on petitioner's work authorization card meant that he had applied for asylum and thus, he concluded, the PRC government had no interest in petitioner as a political dissident. It bears repeating that there was no evidence that NIC was owned by or had ties to the PRC government much less evidence that petitioner knowingly chose to work for a corporation with such ties. But the IJ found it "incredible," "cloud[ing]" petitioner's testimony with "a lot of intrigue" that "the personnel of [NIC] were aware of [petitioner's asylum] application and . . . did not give any importance to the fact that he was applying for asylum." None of this was based on anything of record and was, by the IJ's own admission, a "feeling." App. at 48.

The IJ also believed that petitioner's lofty-sounding job title while in the PRC meant that he held an important position, thus, undermining his credibility. This, too, gives us some pause given petitioner's clear and uncontradicted testimony that his position actually entailed a good deal of manual labor at a construction site. We see nothing on the record to suggest that that was not so, his job title aside.

Finally, despite the IJ's statement that petitioner's very ability to have left the PRC and traveled to the United States "raises some eyebrows on the part of the Court" (id. at 46-47), the mere possession of a passport does not necessarily suggest that an asylum applicant has no legitimate or well-grounded fear of persecution. See Cordero-Trejo v.

6

I.N.S., 40 F.3d 482, 490 (1st Cir. 1994); United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status, ¶ 48, at 14 (Geneva 1979). Furthermore, the IJ's bald statement that the PRC's issuance of a passport and student visa to petitioner "belies all kinds of historical treatment by the government of the [PRC] in dealing with dissidents,"and was "contrary to China's historical treatment of political dissidents," is, even if correct, supported by nothing in the record. What is in the record and ignored by the IJ was petitioner's testimony that he obtained his travel documents outside of conventional channels because he did not believe that he could obtain them any other way. The IJ concluded, however, that "what I think happened in this case is that the respondents were very good students . . . and they were probably holding positions of [a] certain degree of authority with the government of the People's Republic of China and in reward of all of those good things, the government decided to send them to the United States to [study] and eventually return to the People's Republic of China, in probably higher positions . . . ." A47-48. All of this is sheer speculation, nothing more and nothing less.

It is thus clear to us that the adverse credibility determination made in this case was not supported by substantial evidence of record and may not stand. Given this conclusion, we need not reach the other issues raised by petitioner, including the issue of the propriety and, indeed, the constitutionality of the BIA's practice of summary affirmance. This issue, we note, will be before this Court en banc in Dia v. Ashcroft, No. 02-2460.

We will grant the petition for review, vacate the BIA's order, and remand this matter

7

with instructions to remand to the IJ for a determination of whether, given the testimony of petitioner that he suffered past and fears future persecution, testimony we have found to be credible, petitioners should be granted asylum and/or withholding of deportation.

TO THE CLERK OF COURT:

Kindly file the foregoing opinion.

___/s/ Maryanne Trump Barry
Circuit Judge